UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
KARLA GIRALDO,

                    Plaintiff,

          -against-

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, DETECTIVE SEAN
WARD, in his official and individual
Capacity, P.O. THOMAS FITZGERALD,
In his official and individual
Capacity, SAFE HORIZON, INC.,
ENIDIA SEOANE, QUEENS COUNTY
DISTRICT ATTORNEY RICHARD A. BROWN,
individually and as the
District Attorney of Queens County,
Assistant District Attorney SCOTT
EVAN KESSLER, Bureau Chief of
Domestic Violence, individually and
In his official capacity, KESHIA
ESPINAL, Assistant District Attorney,
In her official capacity, NORTH SHORE-
LONG ISLAND JEWISH HEALTH SYSTEM, INC.,
DAWNE KORT, M.D., SUSAN CABIBBO, R.N.,
DR. DANIEL FROGEL,

                    Defendants.
---------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 10 2010 ★

BROOKLYN OFFICE

COMPLAINT
JURY DEMAND

CV10-5754

GLEESON. J.

CARTER, M.J.

          The Plaintiff, KARLA GIRALDO ("GIRALDO"), by and

through her attorneys, the law firm of CRONIN & BYCZEK, LLP,

as and for her Complaint against defendants, respectfully

sets forth the following:

## NATURE OF ACTION

          1.    This is an action for declaratory relief and also

seeks money damages for violations of the Civil Rights Acts

42. U.S.C. §1983, §1985 and §1986 along with other State

causes of action.

2.    Plaintiff seeks damages both compensatory and punitive, an award of costs, interest and attorneys fees and such other relief as this Court may deem just and equitable.

## JURISDICTION

3.    The jurisdiction of this Court is invoked based upon Federal questions.  Further, the jurisdiction of this Court is invoked pursuant to the Constitution of the United States, 28 U.S.C. § 1343(3) and (4) and 28 U.S.C.§ 1331 as well as 42 U.S.C. § 2000 e through 2000 e(15).

4.    The rights, privileges and immunities sought herein to be redressed are those secured by the equal protection and due process clauses of the Fourteenth Amendment of the United States  Constitution;  42  U.S.C.  §  1983  and  §  1985,  and guidelines and rules promulgated thereunder.

## VENUE

5.    Venue is invoked pursuant to 28 U.S.C. § 1391 as plaintiff resides in Queens County within the State of New York, and that the unlawful practices alleged below were committed in the Eastern District of New York within the State of New York.  Accordingly, venue lies in the United States District Court for the Eastern District of New York.

2

## PARTIES

6.    That plaintiff, KARLA GIRALDO, is a Hispanic female
and a resident of the City of New York, County of Queens,
State of New York.

7.    Defendant CITY OF NEW YORK (hereinafter referred
to as "NYC") is a municipal corporation duly organized under
the laws of the City and State of New York, having its place
of business within the City of New York, and within the
Eastern District, including as its function operating,
managing and financing the New York City Police Department.

8.    Upon information and belief, the NEW YORK CITY
POLICE DEPARTMENT (hereinafter referred to as "NYPD") operates
under the direct authority of the NYC and is the official NYC
agency charged with law enforcement and investigative duties
throughout NYC, and maintains and controls offices at 1 Police
Plaza, New York, New York, along with satellite offices and
precincts throughout the City and Borough of Queens, within
the Eastern District of New York.

9.    Defendant, DET. SEAN WARD (hereinafter referred to
as "WARD"), at all times relevant to this Complaint was a
New York City Police Officer and Detective assigned to the
105th Precinct in Queens, New York.  At all times relevant,
Det. Ward was involved in the investigation regarding the
Plaintiff and is sued in his individual and official

3

capacities.

10. Defendant P.O. THOMAS FITZGERALD (hereinafter referred to as "FITZGERALD"), at all times relevant to this Complaint was a New York City Police Officer and assigned to the 105th Precinct in Queens, New York. At all times relevant, P.O. Fitzgerald was involved in the investigation regarding the Plaintiff and swore to and executed a criminal affidavit regarding Hiram Monserrate and is sued in his individual and official capacities.

11. Defendant SAFE HORIZON, INC., (hereinafter referred to as "SAFE HORIZON") at all times relevant to this Complaint was a Domestic Non-for-Profit Corporation with offices located at 2 Lafayette Street, New York, New York 10007. Defendant SAFE HORIZON, is a victims' services agency operating within the Eastern District of New York.

12. Defendant ENIDIA SEOANE (hereinafter referred to as "SEOANE"), at all times relevant to this Complaint was the Senior Case Manager, Queens Criminal Court Program for SAFE HORIZON. Her office was located at 126-02 82nd Avenue, Room 103, Kew Gardens, New York.

13. Defendant RICHARD A. BROWN (hereinafter referred to as "BROWN") was, and still is, the Queens County District Attorney. In his capacity as District Attorney, defendant BROWN is responsible for the creation, implementation,

4

promulgation and enforcement of the policies, practices and/or customs related to the investigation and prosecution of criminal actions in Queens County and for the supervision and training of the staff of the District Attorney's Office. He is sued in his individual and official capacity.

14.    Defendant SCOTT EVAN KESSLER (hereinafter referred to as "KESSLER") is employed as an Assistant District Attorney, Queens County, and was the Bureau Chief of Domestic Violence at all relevant times.    He was responsible for investigating and prosecuting criminal cases on behalf of the District Attorney in the County of Queens. He is sued in his individual and official capacity.

15.    Defendant KESHIA ESPINAL (hereinafter referred to as "ESPINAL") is employed as an Assistant District Attorney, Queens County at all relevant times.    She was responsible for investigating and prosecuting criminal cases on behalf of the District Attorney in the County of Queens. She is sued in her individual and official capacity.

16.    Defendant NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., (hereinafter referred to as "LIJ"), was and is a corporation duly organized and existing under the laws of the State of New York.

17.    At all times hereinafter mentioned, Defendant LIJ by its agents, servants and employees, controlled, managed,

operated and supervised medical staff and the hospital located at 410 Lakeville Road, New Hyde Park, and Queens County, New York.

18.    Defendant DAWNE KORT, M.D. (hereinafter referred to as "KORT"), at all relevant times was an agent, servant and/or employee of Defendant LIJ.

19.    Defendant KORT, at all relevant times was a private attending physician with privileges to admit and treat patients at LIJ and was the attending physician in the Emergency Room at LIJ on December 19, 2008.

20.    Defendant SUSAN CABIBBO, R.N. (hereinafter referred to as "CABIBBO"), at all relevant times was agent, servant and/or employee of Defendant LIJ and was working in the Emergency Room Triage area of LIJ on December 19, 2008.

21.    Defendant DANIEL FROGEL, M.D. (hereinafter referred to as "FROGEL"), at all relevant times was an agent, servant and/or employee of Defendant LIJ.

22.    Defendant FROGEL, at all relevant times was a private physician with privileges to admit and treat patients at LIJ and was the Chief Emergency Medicine Resident at LIJ on December 19, 2008.

6

## FACTUAL BACKGROUND

23.   On December 19, 2008, Plaintiff was accidently injured while being brought a glass of water by her boyfriend.   The glass of water subsequently broke and she was injured by the flying glass.

24.   Plaintiff's boyfriend transported Plaintiff to LIJ Emergency Room on December 19, 2008 so that she could receive medical treatment.

25.   Plaintiff required a translator to help her communicate with all Defendants, in fact translators were provided to her throughout her ordeal on December 19, 2008.

26.   While at LIJ, Plaintiff was interviewed and treated by Defendants KORT and FROGEL and subsequently received twenty (20) stitches from another doctor to close the approximately ½ inch laceration above her left eye.

27.   While at the hospital Plaintiff informed KORT and FROGEL that her injury was caused accidently by her boyfriend and there was never any intention on the part of her boyfriend to injure her.

7

28.   Despite Plaintiff's repeated statements to KORT, defendant KORT became very aggressive and angry at Plaintiff because she refused to admit to KORT that her boyfriend intentionally caused her laceration.   KORT threatened Plaintiff and pressed Plaintiff to state that the boyfriend assaulted her despite the fact that it was not true.   KORT also told Plaintiff that she knew that Plaintiff's boyfriend was a politician.

29.   Despite Plaintiff's repeated statements to the LIJ medical staff that Plaintiff's injuries were due to an accident, Defendants KORT and FROGEL contacted the NYPD regarding their "suspicion" of domestic abuse.

30.   Defendant CABIBBO was working in the Emergency Room at LIJ on December 19, 2008 when she first met Plaintiff and her boyfriend.

31.   CABIBBO refused to allow Plaintiff's boyfriend to accompany Plaintiff into the examination room so that he could translate for the Plaintiff since English was her second language.

32.   While Plaintiff was in the triage area, CABIBBO obtained Plaintiff's history.

33.   LIJ policy, guidelines and procedure regarding domestic violence victims, require doctors, physician's assistants and nurses to "quote the informant/patient as much as possible".

34.   Despite Plaintiff never telling CABIBBO that she was involved in an altercation, CABIBBO nevertheless erroneously reported in her triage notes that Plaintiff's injury was caused as a result of an "altercation".

35.   At not time did CABBIBO on December 19, 2008 ever ask Plaintiff who she had an altercation with.

36.   At no time in CABIBBO's triage notes does she ever state that Plaintiff said "He is crazy. He is crazy".

37.   At not time did CABIBBO on December 19, 2008 believe that Plaintiff was a victim of domestic violence.

38.   Despite Plaintiff informing CABIBBO that she was not in need of any help from the Police, CABIBBO nevertheless contacted the NYPD and falsely informed them that Plaintiff was a victim of domestic violence.

39.   Defendant LIJ has a written administrative policy and procedure with respect to suspected domestic violence crimes.

9

40.   The LIJ Defendants intentionally and over zealously exaggerated Plaintiff's injuries and cause of said injury solely because they knew Plaintiff's boyfriend was a high profile New York State Politician.

41.   Defendants FROGEL and CABIBBO conspired with the NYPD and the DA to create statements that would falsely implicate Plaintiff's boyfriend of a crime and falsely state comments that were allegedly made by Plaintiff.

42.   LIJ Defendants spoke about who Plaintiff's boyfriend was to their colleagues at the hospital after Plaintiff was taken away by the NYPD to the 105th Precinct.

43.   Soon thereafter, Defendant FITZGERALD and another police officer arrived at LIJ to investigate.   FITZGERALD spoke with Plaintiff's boyfriend and Plaintiff separately and was told that the injury to the Plaintiff was due to an accident caused by a broken glass.

44.   While Plaintiff was in the emergency room, Defendants FROGEL and FITZGERALD conspired to arrest Plaintiff's boyfriend while Plaintiff was being treated.

45.   Despite knowing that the small laceration to Plaintiff's forehead was caused by an accident, Defendant FITZGERALD arrested Plaintiff's boyfriend.

10

46.   Plaintiff, despite demanding to be discharged from the hospital, was not permitted to leave by KORT and FROGEL.

47.   Subsequently, Plaintiff, against her will, was forcefully transported to the 105th Precinct and was interrogated by Defendant WARD.

48.   Upon arrival at the 105th Precinct, Plaintiff had no coat, had not eaten for over 10 hours, and was wearing only a pair of slippers.  At no time did WARD or any other NYPD personnel offer Plaintiff any socks, blanket or coat to keep her warm despite telling WARD that she was cold.

49.   Plaintiff has difficulty communicating to WARD due to the pain from the stitches.

50.   While at the 105th Precinct, Plaintiff was not permitted to call a relative to come and pick her up.

51.   During the interrogation by WARD, Plaintiff was forcefully ordered to sign a statement accusing her boyfriend of assaulting her.  Plaintiff again informed WARD and other detectives that she was not assaulted and that her injury was caused by accident.

52.   Detectives tried to take Plaintiff's photographs while at the 105th Pct. against her will.

11

53.  In order to make Plaintiff make a false statement against her boyfriend, Defendant WARD made false, misleading and fallacious statements about her boyfriend having many girlfriends, being married and his wife being present in the Precinct and would be introduced to the Plaintiff if she would sign an accusatory statement against her boyfriend.

54.  While at the police Precinct, Plaintiff informed WARD that she was in tremendous pain from the stitches now that the anesthesia had worn off and wanted to go home so that she could rest.  Said request was refused by WARD and he continued to aggressively question her causing Plaintiff to be frightened and intimidated.

55.  During Plaintiff's false imprisonment at the 105th Precinct by WARD and other NYPD members, she spoke with Detective Stephen Vessa and Detective Robert Arnold, who had worked with her boyfriend (a former police officer). Plaintiff informed Detectives Vessa and Arnold that her injury was an accident.  Later on, Detective Vessa informed Plaintiff that "they're trying to flip you".

12

56. Finally, after over 5 hours of interrogation by WARD and other NYPD personnel and over 12 hours after she was accidentally injured, Plaintiff agreed to write a statement in Spanish since she can not write in English well regarding what happen between herself and her boyfriend if WARD agreed to let her go home.

57. Plaintiff's written statement, in Spanish, did not accuse her boyfriend of any crime and specifically stated that her injury was cause by accident.

58. Defendant FITZGERALD takes the Spanish written statement and smacked it down on the table and says "We are in America, translate this into English." He also orders Plaintiff to "Put more, this is nothing. Write it in English." Plaintiff tells FITZGERALD and WARD that she can't because she is tired, in pain and wanted to go home.

59. The NYPD Defendants intentionally and over zealously exaggerated the accident that caused Plaintiff's injuries solely because they knew Plaintiff's boyfriend was a high profile New York State Politician.

60. Despite being assured that she could go home after writing the statement, Plaintiff was taking downstairs to a waiting police car and denied going home and driven to the Queens District Attorney's office against her will.

61. Plaintiff was forcefully detained at the D.A.'s

13

office and was continuously denied her freedom to leave and go home.

62.    While at the Queens D.A.'s office, Plaintiff was first questioned by Defendant SEOANE despite Plaintiff informing her that she did not want to talk to her.   Despite said request by Plaintiff, SEOANE continued to bombard her with personal questions and questioning Plaintiff's sanity and stability causing Plaintiff to become upset, humiliated and frighten and insisted that she wanted to go home but was denied.

63.    Plaintiff was than taking to another room against her will in the D.A.'s office and was interrogated by Defendants KESSLER and ESPINAL.   Plaintiff told both of them that she did not want to talk to them; she was still in pain due to the anesthesia and wanted to go home.   They refused to let her leave.

64.    KESSLER and ESPINAL continued to interrogate Plaintiff in an attempt to get Plaintiff to change her statement that what occurred was an accident.

65.    KESSLER became upset and yelled at Plaintiff through the Spanish interpreter because Plaintiff would not change her statement.

66.    Despite adamantly telling KESSLER and ESPINAL that Plaintiff was not the victim of Domestic Violence, and that

14

she wanted to go home, they refused to let Plaintiff leave and continued to interrogate her for approximately 2 hours.

67.   All Defendants tried to get Plaintiff to lie about what happen between herself and her boyfriend, who happen to be a politician.

68.   The D.A. Defendants intentionally and over zealously exaggerated the accident that caused Plaintiff's injuries and unlawfully detained and interrogated Plaintiff solely because they knew Plaintiff's boyfriend was a high profile New York State Politician.

69.   Plaintiff was finally taking from the Queens D.A.'s office and driven to a location on Queens Blvd. in Queens County and dropped off by 2 NYPD detectives where she waited to be picked up by her cousin sometime after 6:30 pm on December 19 2008, almost 16 hours after the accident occurred.

70.   The Defendants communicated amongst each other to conspire to identify Plaintiff as a victim of domestic violence despite the fact that they were told by the Plaintiff that her injury was caused by an accident and that she was never assaulted by anyone including her boyfriend.

71.   Throughout her detainment by the Defendants, Plaintiff was treated as if she was a criminal and a suspect rather than an innocent individual who had suffered a minor injury as a result of an accident.

72.   The conduct of the Defendants was unreasonable and caused Plaintiff to fear for her safety.

72.   As a result of the identify of Plaintiff's boyfriend and his political status, all of the defendants conspired among each other and with each other to unlawfully detain and prevent Plaintiff from leaving the hospital, the police precinct and the Queens District Attorney's Office until she would falsely accuse her boyfriend of assaulting her, which Plaintiff refused continuously throughout the approximately 16 hour ordeal.

## AS AND FOR A FIRST CAUSE OF ACTION
## PURSUANT TO 42 USC § 1983

73.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-72 with the same force and effect as if fully set forth herein.

16

caused by defendants without authority of the law and without any reasonable cause or belief that plaintiff was in fact a victim of domestic violence or any other crime.

79.   That defendants acting within the scope of their authority and within the scope of their employment, detained and interrogated plaintiff, even though defendants knew, had the opportunity to know, or should have known, that the matters herein stated were alleged wrongfully and unlawfully.

80.   LIJ, NYPD and DA defendants conspired together to violate plaintiff's rights, in that the individual defendants acted in concert to unlawfully violate plaintiff's rights to be free of unlawful imprisonment, detention and excessive and forceful interrogation.

81.   The conduct and actions of the individual defendants, acting under color of law, was done intentionally, maliciously and/or with reckless disregard of the natural and probable consequences of their acts, was done without lawful justification and was designed to and did cause specific pain and suffering, mental anguish, extreme emotional distress, humiliation and embarrassment in violation of Plaintiff's constitutional rights as guaranteed under the Fourteenth Amendment, in violation of 42 U.S.C. §1983.

82.   As a consequence of defendants' unlawful actions,

18

plaintiff demands damages in the amount of Five Million ($5,000,000.00) Dollars.

## AS AND FOR A SECOND CAUSE OF ACTION
## PURSUANT TO 42 U.S.C. §1985

83.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraph "1" through "82" with the same force and effect as if fully set forth herein.

84.   All of the acts and conduct of the defendants herein stated were done under color of law and custom and practice of the NYPD, DA and LIJ.

85.   All individual Defendants have conspired with and amongst each other to deprive Plaintiff of her rights under the United States Constitution and federal and state law.

86.   The individual Defendants, under color of law, conspired with each other to undertake a course to injure, threaten and intimidate Plaintiff in the free exercise and enjoyment of her rights and privileges and equal protection of the law secured by her by the Constitution and to impede, obstruct and hinder the due course of justice in New York State.

87.   The individual Defendants have conspired to violate the Plaintiff's civil rights pursuant to 42 U.S.C. §1985 when Plaintiff was unlawfully detained at the

19

hospital, unlawfully and forcefully taken to the 105th Precinct, unlawfully detained, imprisoned and held on a false and fabricated claim that she was a victim of domestic violence for which the defendants conspired between each other in order to force Plaintiff to falsely accuse her boyfriend.

88.   The individual defendants acted in furtherance of the objective of the conspiracy to harass and injure plaintiff for not cooperating with them against her politician boyfriend.

89.   Upon information and belief, the individual defendants' conspiracy to harass, injure, and detain the plaintiff was motivated by plaintiff's unwillingness to participate in the investigation and falsification and charges against her politician boyfriend.

90.   The actions of the individual defendants were a concerted effort and by their participation in the harassing conduct, as stated herein, were willful and malicious acts.

91.   As a consequence of individual defendants' unlawful action and conduct, plaintiff is entitled to damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS, and Punitive damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS, and attorneys and expert fees in an amount to be ascertained at the conclusion of this

20

litigation.

## AS AND FOR A THIRD CAUSE OF ACTION
## PURSUANT TO 42 U.S.C. §1986

92.   Plaintiff repeats, reiterates, and realleges
each and every allegation contained in paragraph "1" through
"91" with the same force and effect as if fully set forth
herein.

93.   As set forth above, the Defendants, or any of
them, having knowledge that the aforementioned violations of
Plaintiff's rights were about to be committed, and having
the power to prevent or aid in the prevention or commission
of the same, neglected and refused to do so, and as a result
such wrongful acts were committed and caused the Plaintiff
to suffer injury in violation of 42 U.S.C. §1986.

94.   As a consequence of individual defendants'
unlawful action and conduct, plaintiff is entitled to
damages in the amount of FIVE MILLION ($5,000,000.00)
DOLLARS, and attorneys and expert fees in an amount to be
ascertained at the conclusion of this litigation.

## AS AND FOR A PENDENT FOURTH CAUSE OF ACTION
## OF GROSS NEGLIGENCE, NEGLIGENCE AND
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

95.   Plaintiff repeats, reiterates, and realleges

21

each and every allegation contained in paragraph "1" through "94" with the same force and effect as if fully set forth herein.

96.   The LIJ Defendants were grossly negligent in their conduct as alleged herein and in failing to take steps that an ordinary, reasonable and prudent person would have pursued to care and protect Plaintiff.

97.   The LIJ Defendants engaged in a cover up in order to conceal their negligent conduct towards the Plaintiff for treating her as a domestic violence victim despite the fact that they were told by Plaintiff that her injury was caused by an accident.

98.   The LIJ Defendants actions caused Plaintiff to fear for her safety.

99.   Said conduct by the LIJ Defendants caused Plaintiff severe emotional and mental injuries, pain and suffering, humiliation and embarrassment.

100. As a consequence of defendants' negligent actions and conduct, plaintiff is entitled to damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS, and Punitive damages as to the individuals in the amount of FIVE MILLION ($5,000,000.00) DOLLARS, and attorneys and expert fees in an amount to be ascertained at the conclusion of this litigation.

22

## JURY TRIAL

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this honorable Court grant the following relief:

1. Declare that the aforementioned actions of defendants were unconstitutional and in violation of the United States Constitution, the New York State Constitution, along with all applicable statutes;

2. As and for plaintiff's First Claim, grant Plaintiff the sum of $5,000,000.00, along with punitive and exemplary damages in the amount of $5,000,000.00;

3. As and for plaintiff's Second Claim, grant plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

4. As and for Plaintiff's Third Claim, grant Plaintiff the sum of $5,000,000.00;

5. As and for Plaintiff's Fourth Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00.

6.    Grant plaintiff all costs for this action, including

reasonable attorney's fees; and

    7. Grant plaintiff such other and further relief as this

Court may seem just and proper.

Dated:  Lake Success, New York
       December 10, 2010

                Yours, etc.

                CRONIN & BYCZEK, LLP

                By: _____
                ROCCO G. AVALLONE (RA8055)
                Attorneys for Plaintiff
                1983 Marcus Avenue, Suite C-120
                Lake Success, New York 11042-1016
                (516) 358-1700

24